IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMES McMENAMIN and<br>JENNIFER McMENAMIN<br>*Plaintiffs* | :<br>:<br>:<br>: | CIVIL ACTION<br><br>NO. 14-4814 |
| v. | :<br>: | |
| PHELAN HALLINAN, LLP,<br>PHYLLIS LEVIN, ZACHARY JONES,<br>ESQUIRE, and WELLS FARGO<br>BANK, N.A.<br>*Defendants* | :<br>:<br>:<br>:<br>:<br>: | |

NITZA I. QUIÑONES ALEJANDRO, J.                              AUGUST 20, 2015

## MEMORANDUM OPINION

**INTRODUCTION**

On November 18, 2014, James McMenamin and Jennifer McMenamin ("Plaintiffs" or "McMenamins") filed an amended complaint against Phelan Hallinan, LLP,[1] Phyllis Levin, Zachary Jones, Esquire, (collectively, the "Phelan Hallinan Defendants"), and Wells Fargo Bank, N.A., ("Defendant Wells Fargo") (collectively, "Defendants"), alleging violations under the Real Estate Settlement Procedures Act, 12 U.S.C. §2605 *et seq.* ("RESPA"), the Fair Debt Collection Practices Act, 15 U.S.C. §§1692 *et seq.* ("FDCPA"), and the Civil Rights Act, 42 U.S.C. §1983 ("§1983"), as well as state law claims, in connection with an underlying mortgage foreclosure action and efforts to obtain a loan modification from Defendant Wells Fargo. [ECF 15].

On December 29, 2014, Defendants filed motions to dismiss the amended complaint pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). [ECF 17, 26]. Plaintiffs filed a response opposing the motions, [ECF 18, 29], and Defendants filed replies. [ECF 21, 32, 35].

---

[1] The firm is now known as Phelan Hallinan Diamond & Jones, LLP.

These motions to dismiss have been fully briefed and are ripe for disposition. For the reasons set forth herein, Defendants' motions to dismiss are granted.

## BACKGROUND

When considering motions to dismiss, a court must accept, as true, all relevant factual allegations in the plaintiffs' amended complaint. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). Here, these salient allegations, gleaned from Plaintiffs' 24-page amended complaint and attached exhibits,[2] are summarized as follows:

> On June 12, 2009, Plaintiffs executed a mortgage and promissory note in the amount of $300,000.00, in favor of First National Bank of Chester County for a property located in Lafayette Hill, Montgomery County, Pennsylvania.[3] On December 15, 2011, the mortgage in default was assigned to Defendant Wells Fargo.[4] On February 24, 2012, Defendant Wells Fargo, through its counsel, Defendant Phelan Hallinan, commenced a mortgage foreclosure action against the McMenamins in the Montgomery County Court of Common Pleas ("MCCCP"), identified as *Wells Fargo Bank, N.A. v. James E. McMenamin, Jr., et al.*, 2012-04834.[5] On April 5, 2012, Jennifer McMenamin, through counsel, filed an answer to the foreclosure complaint.[6] As a result of marital discord, Plaintiffs separated and vacated the property. Thereafter, Defendant Wells Fargo secured the property

---

[2] When deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents. *Pension Ben. Guar. Corp. v. White Consol. Industries, Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Here, Plaintiffs attached exhibits to the original complaint, [ECF 1], and attached the same exhibits to an amended complaint which was stricken for failure to comply with Rule 15. [ECF 5, 7]. It appears, however, that Plaintiffs have inadvertently failed to attach exhibits to the properly filed amended complaint. [ECF 15]. Because Plaintiffs explicitly rely upon documents referenced in said amended complaint, this Court may still consider the exhibits attached to previous complaints. *See West Penn Allegheny Health System, Inc. v. UMPC*, 627 F.3d 85, 97 n.6 (3d Cir. 2010) (while district court generally may not consider documents extraneous to the pleadings when ruling on a motion to dismiss, "[a] limited exception exists for documents that are '*integral to or explicitly relied upon in the complaint.*'") (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (emphasis in original and internal quotation marks omitted)); *see also In re Rockefeller Center Properties, Inc. Securities Litigation*, 184 F.3d 280, 287 (3d Cir. 1999) (a court can consider "a document integral to or explicitly relied upon in the complaint . . . [and] an indisputably authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.").

[3] Am. Compl. ¶8; *see also* Mortgage. [ECF 5-1].
[4] Am. Compl. ¶¶9-10; *see also* Consent Judgment. [ECF 5-1].
[5] Am. Compl. ¶12; MCCCP Docket Report, Am. Compl., Exhibit B. [ECF 5-1].
[6] Am. Compl. ¶13.

and changed the locks.[7] It is unclear when, but Plaintiffs later reunited.[8] On December 12, 2012, Defendant Wells Fargo took a default judgment against James McMenamin for failure to respond to the complaint.[9]

*Loan Modification Requests*

On June 25, 2012, during the pendency of the foreclosure action, James McMenamin contacted Defendant Wells Fargo to request a loan modification.[10] Defendant Wells Fargo sent Plaintiffs a loan modification package with instructions to complete the application and provide documents for consideration of the modification request.[11] On September 25, 2012, Plaintiffs returned their completed loan modification application with supporting documents to Defendant Wells Fargo. Plaintiffs sent additional documents on October 15 and 16, 2012.[12]

On October 18, 2012, Defendant Wells Fargo wrote to Plaintiffs, stating that it was "unable to reach a mutual agreement regarding the options available to assist" them.[13] On October 30, 2012, and November 14, 2012, Defendant Wells Fargo again wrote to Plaintiffs, acknowledging receipt of supporting documents and notifying them that the documents were being considered.[14] Also, on November 14, 2012, Defendant Wells Fargo wrote Plaintiffs to thank them for their interest in the "Borrower Counseling Program," and invited Plaintiffs to fill out an application and submit documentation within ten days. Plaintiffs contend that this correspondence gave them the impression that they were beginning the loan modification process anew.[15]

On December 4 and 12, 2012, at the request of Defendant Wells Fargo, Plaintiffs submitted more supporting documents, including, *inter alia*, "another hardship letter," paystubs, and tax returns.[16] As Defendant Wells Fargo had not yet made a decision on Plaintiffs' request for a loan modification, nor had it notified Plaintiffs of any deficiencies in their application, Plaintiffs were under the impression that the modification was progressing.[17]

As stated, on December 12, 2012, a default judgment was entered in favor of Wells Fargo and against James McMenamin for failure to answer the MCCCP foreclosure complaint.[18]

---

[7] *Id.* at ¶¶19-20.
[8] *Id.* at ¶21.
[9] *Id.* at ¶14.
[10] *Id.* at ¶¶31-32.
[11] *Id.* at ¶31.
[12] *Id.* at ¶¶33-34.
[13] *Id.* at ¶35.
[14] *Id.* at ¶¶36-37.
[15] *Id.* at ¶38.
[16] Am. Compl. ¶¶39-40.
[17] *Id.* at ¶40.
[18] *Id.* at ¶14; MCCCP Docket Report, Line 16.

On January 30, 2013, James McMenamin telephoned Defendant Phyllis Levin ("Defendant Levin"), a paralegal at Defendant Phelan Hallinan, to inquire on the status of the loan modification and a so-called "*step code*."[19] On February 4, 2013, Defendant Levin emailed James McMenamin to inform him that she was waiting to hear from Defendant Wells Fargo (presumably about the "step code").[20]

On February 6, 2013, Defendant Levin "contacted Plaintiffs and informed them that because an answer to the foreclosure had been filed, the modification would 'sit' and the house could not be sold. Plaintiffs were asked to have Jennifer McMenamin's attorney, James Jacquette, Esquire, withdraw her answer and his appearance."[21]

On February 11, 2013, Defendant Wells Fargo filed a motion for summary judgment (as the plaintiff) in the MCCCP foreclosure action. This motion was later denied.[22]

On March 27, 2013, Defendant Levin emailed Plaintiffs to request more financial information to process the loan modification.[23] On April 13, 2013, Plaintiffs faxed to Defendant Levin "HMCC Form 710, paystubs, proof of unemployment, bank statements, tax returns, and Form 4506 T."[24] On April 17, 2013, James McMenamin telephoned Defendant Levin and informed her that Defendant Wells Fargo advised Plaintiffs that "there was still a 'cease and desist' on the account and a 'step' code," and that Defendant "Wells [Fargo] could not speak to James McMenamin."[25]

Plaintiffs aver that James McMenamin submitted all requested documents, paystubs, letters, and proofs of income requested by Defendants between January 2012 and October 2013, and that Defendant Levin did not forward the submitted loan modification documents to Defendant Wells Fargo.[26]

*Consent Judgment*

Plaintiffs further contend that Defendant Levin told James McMenamin that there was a *step code*[27] from Defendant Wells Fargo on the loan modification application and that "it would not be considered," nor would the loan modification "be obtained," unless (1) Jennifer McMenamin discharged Attorney

---

[19] Am. Compl. ¶42.
[20] *Id.* at ¶43.
[21] *Id.* at ¶45.
[22] MCCCP Docket Report, Lines 19, 20.
[23] Am. Compl. ¶46.
[24] *Id.* at ¶47.
[25] *Id.* at ¶49.
[26] *Id.* at ¶¶41, 52, 54.
[27] This Court notes the apparent inconsistency in the amended complaint as to which Defendant informed the McMenamins about the *step code*. *See* Am. Compl. ¶¶49, 55.

Jacquette, (2) withdrew her answer to the foreclosure complaint with prejudice, (3) agreed to allow a consent judgment to be entered against the McMenamins, (4) allowed a reassessment of damages, and (5) executed a release of any and all claims that the McMenamins may have against Defendant Wells Fargo.[28] Although Plaintiffs do not indicate when Defendant Levin made these demands, they contend they were advised that as long as they contested the foreclosure action, Defendant Wells Fargo would not grant the loan modification.[29]

On August 13, 2013, Attorney Jacquette withdrew his appearance on behalf of Jennifer McMenamin.[30] Defendant Zachary Jones, Esquire ("Defendant Jones"), an attorney at Defendant Phelan Hallinan, prepared a consent judgment,[31] which Plaintiffs signed on September 3, 2013, and returned via email the following day to Defendant Levin.[32]

On September 6, 2013, Defendant Wells Fargo, through Defendant Phelan Hallinan, filed the consent judgment with the MCCCP, and on September 19, 2013, judgment was entered in favor of Wells Fargo and against the McMenamins in the amount of $296,483.76.[33]

On October 14, 2013, Brian J. Smith, Esquire (counsel in this matter) entered his appearance on behalf of the McMenamins in the MCCCP foreclosure action,[34] and "filed a Petition to Open Judgment as to both Plaintiffs in the state court."[35] Defendant Wells Fargo did not contest the petition and by an order dated January 16, 2014, judgment was opened by consent.[36]

On June 19, 2014, Defendant Wells Fargo filed a second motion for summary judgment,[37] which was denied on November 17, 2014.[38] No other substantive docket activity in the MCCCP foreclosure action has occurred and the matter remains pending.

Procedurally:

On August 15, 2014, Plaintiffs filed a complaint against Defendants in federal court. [ECF 1]. The Phelan Hallinan Defendants filed a motion to dismiss on October 17, 2014. [ECF 2]. Plaintiffs filed an amended complaint on November 18, 2014, [ECF 5], which was stricken the following day for failure to

---

[28] Am. Compl. ¶¶55, 57.
[29] Id. at ¶56.
[30] MCCCP Docket Report, Line 27.
[31] See Am Compl., Exhibit D. [ECF 5-1].
[32] Am. Compl. ¶60.
[33] MCCCP Docket Report, Lines 28-30.
[34] Id. at Line 38.
[35] Am Compl. ¶64; MCCCP Docket Report, Line 39.
[36] Am. Compl. ¶65; MCCCP Docket Report, Line 42.
[37] MCCCP Docket Report, Line 48.
[38] Id. at Line 66.

comply with Rule 15(a). [ECF 7]. On November 20, 2014, Plaintiffs filed a motion to amend the complaint, [ECF 9], which was opposed by the Phelan Hallinan Defendants. [ECF 10]. On December 16, 2014, Plaintiffs' motion to amend the complaint was granted, [ECF 14], and the amended complaint was deemed filed that same day.

On December 29, 2014, the Phelan Hallinan Defendants filed a motion to dismiss Plaintiffs' amended complaint, [ECF 17], and on January 11, 2015, Plaintiffs filed a response, [ECF 18], to which the Phelan Hallinan Defendants filed a reply on January 22, 2015. [ECF 21]. On February 26, 2015, Defendant Wells Fargo filed a motion to dismiss Plaintiffs' amended complaint, [ECF 26], on March 23, 2015, Plaintiffs filed a response, [ECF 29], to which Defendant Wells Fargo filed a reply on April 9, 2015. [ECF 32]. On July 7, 2015, Defendant Phelan Hallinan filed a supplemental letter brief. [ECF 35].

**LEGAL STANDARD OF REVIEW**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) *(quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) ("a plaintiff must allege facts sufficient to 'nudge [her] claims across the line from conceivable to plausible.'") (quoting *Twombly*, 550 U.S. at 570). When considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), the court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Fowler*, 578 F.3d at 210-11. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)) (alterations in original). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (quoting *Bell Atlantic*, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Id.*

6

In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, and may consider matters of public record and undisputedly authentic documents if the complainant's claims are based upon these documents. *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010); *Pension Ben. Guar. Corp. v. White Consol. Industries, Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). A court can also consider "an indisputably authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *In re Rockefeller Center Properties, Inc. Securities Litigation*, 184 F.3d 280, 287 (3d Cir. 1999).

**DISCUSSION**

As stated, Plaintiffs' federal claims purportedly assert violations of §§1692e and 1692f of the FDCPA and of §1983 of the Civil Rights Act against all Defendants, as well as a violation of RESPA against Defendant Wells Fargo *only*. These claims will be addressed *ad seriatim*.

*Fair Debt Collection Practices Act ("FDCPA") Claims*

At Count I of the amended complaint, Plaintiffs essentially aver that Defendants, acting in concert, but that Defendant Wells Fargo, in particular, breached the terms of the agreement in the National Mortgage Settlement[39] when it required Plaintiffs to waive claims or defenses as a prerequisite for a loan modification. Plaintiffs contend that this breach constituted a false, deceptive debt collection practice which violates the FDCPA. Plaintiffs also contend that Defendant Phelan Hallinan, in implementing Defendant Wells Fargo's policy, further coerced Plaintiffs to discharge their attorney, execute a consent judgment, withdraw their answer with prejudice, and grant a release of all claims to Defendants. Plaintiffs contend that these actions and representations violated §1692e of the FDCPA.

---

[39] *See United States v. Bank of America, et al.*, CIV. A. 12-00361 (D.D.C. 2012).

Congress enacted the FDCPA in 1977 "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. §1692e; *Kaymark v. Bank of America, N.A.*, 783 F.3d 168, 174 (3d Cir. 2015). "As remedial legislation, the FDCPA must be broadly construed in order to give full effect to these purposes," *Kaymark*, 783 F.3d at 174 (quoting *Caprio v. Healthcare Revenue Recovery Grp., LLC*, 709 F.3d 142, 148 (3d Cir. 2013)), and, as such, communications giving rise to a FDCPA claim are analyzed "from the perspective of the least sophisticated debtor." *Id.* (quoting *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008) (internal quotation marks omitted)).

To state a claim under the FDCPA, a plaintiff must establish that: (1) he or she is a consumer; (2) the defendant is a debt collector; (3) the defendant's challenged practice involves an attempt to collect a "debt" arising out of a transaction entered into primarily for personal, family, or household purposes; and (4) the defendant has violated, by act or omission, a provision of the FDCPA in attempting to collect the debt. *Jensen v. Pressler & Pressler*, --- F.3d ---, 2015 WL 3953754, at *2 (3d Cir. 2015) (quoting *Douglass v. Convergent Outsourcing*, 765 F.3d 299, 303 (3d Cir. 2014) (quotation marks omitted)); *see also Berk v. J.P. Morgan Chase Bank, N.A.*, 2011 WL 4467746, at *3 (E.D. Pa. Sept. 26, 2011).

An action under the FDCPA, must be brought "within one year from the date on which the violation occurs." 15 U.S.C. §1692k(d); *Glover v. F.D.I.C.*, 698 F.3d 139, 148 (3d Cir. 2012); *Pagan v. Monterrey Collection Services*, 2007 WL 966009, at *2 (E.D. Pa. Mar. 29, 2007). The FDCPA is generally characterized as a "strict liability" statute because "it imposes liability without proof of an intentional violation." *Glover*, 698 F.3d at 149 (citing *Allen ex rel. Martin v. LaSalle Bank, N.A.*, 629 F.3d 364, 368 n. 7 (3d Cir. 2011)). Thus, the FDCPA's statute of limitations is not subject to waiver or tolling. *Dixon v. Law Offices of Peter E. Meltzer &*

*Associates, P.C.*, 2007 WL 275877, at *3 (E.D. Pa. Jan. 26, 2007); *Hutt v. Albert Einstein Med. Ctr.*, 2005 WL 2396313, at *8 (E.D. Pa. Sept. 28, 2005).

In their motion to dismiss, Defendants argue, *inter alia*, that Plaintiffs' FDCPA claims are time-barred.[40] This Court agrees.

As stated, Plaintiffs' FDCPA claims are premised upon Defendants' alleged false, deceptive, and/or misleading representations, and/or the means used in their mortgage and loan modification processes. Specifically, Plaintiffs aver that "[d]uring the time period from *January 2012 to October 2013*, Plaintiffs sent loan modification with supporting documents to Defendant

---

[40] Alternatively, Defendants argue that the FDCPA does not apply because Plaintiffs failed to aver that Defendant Wells Fargo is a debt collector, as defined in the FDCPA. This Court rejects this argument as did the Third Circuit in *Federal Trade Commission v. Check Investors, Inc.*, which reiterated a previous holding that an entity meets the statutory definition of a "debt collector" if the defendant acquired the debt at issue while the debt was in default. 502 F.3d 159, 173-74 (3d Cir. 2007). Here, Plaintiffs allege that when the mortgage was assigned to Defendant Wells Fargo, the loan was in default. Am. Compl. ¶¶9-10. Thus, under the holding in *Check Investors*, Defendant Wells Fargo meets the FDCPA's statutory definition of "debt collector." Similarly, the Phelan Hallinan Defendants argue that Defendant Levin, a paralegal at the firm, is not personally liable under the FDCPA definition of debt collector. This argument is also flawed since the FDCPA provides that those who "engaged in consumer-debt-collection activity, even when that activity consists of litigation" are covered by the FDCPA. *See Kaymark*, 783 F.3d at 176 (quoting *Heintz v. Jenkins*, 514 U.S. 291, 299 (1995)). Plaintiffs pled that Defendant Levin was their point of contact with, and is an employee of, Defendant Phelan Hallinan which, in turn, was counsel to Defendant Wells Fargo in the mortgage foreclosure action. Thus, Defendant Levin's actions fall within the definition of debt collector, as contemplated by the FDCPA.

With respect to James McMenamin contacting Defendant Wells Fargo for a loan modification, Defendants argue that the FDCPA is inapplicable to consumer-initiated communications. The Third Circuit held in *Kaymark*, however, that "a communication cannot be uniquely exempted from the FDCPA because it is a formal pleading or, in particular, a complaint." *Kaymark*, 783 F.3d at 178. Nowhere does the FDCPA exclude foreclosure actions from its reach; in fact, foreclosures meet the broad definition of "debt collection" under the FDCPA. *Id.* at 179; *McLaughlin v. Phelan Hallinan & Schmieg*, 756 F.3d 240, 245 (3d Cir. 2014) (defining "debt collection" as "activity undertaken for the general purpose of inducing payment."). Applying the Third Circuit's holding of what constitutes a communication, this Court finds that the foreclosure complaint filed on February 24, 2012, was a communication, *Kaymark*, 783 F.3d at 178 (citing *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1032 (9th Cir. 2010) (holding that a complaint served on the debtor is a communication subject to the FDCPA)), made in the course of debt collection activity. Plaintiff James McMenamin's June 25, 2012 inquiry with Defendant Wells Fargo regarding a loan modification was made *after* commencement of the foreclosure action, (the debt collection activity) and, therefore, cannot be considered a communication "initiated" by Plaintiffs. Thus, this Court finds that the communication in question was initiated by Defendants and the FDCPA applies.

Levin,"[41] and that "*from October 2012 through October 2013*," James McMenamin "spoke to, corresponded with" Defendant Levin via email, fax, and the mail."[42] Specifically, Plaintiffs aver that the purported misrepresentations were made as follows:

> 55. During the course of the *interaction* between Plaintiff James McMenamin and Levin Plaintiff James McMenamin was told by Levin that there was a "step" code from Wells on his loan modification application and that it would not be considered unless Plaintiff Jennifer McMenamin discharged James Jacquette, Esquire, withdrew her answer to the foreclosure with prejudice, that both Plaintiffs James and Jennifer McMenanmin [sic] agree to allow a judgment by consent be entered against them, to allow reassessment of damages and to execute a release of any and all claims that Plaintiffs may have against Wells, their attorneys, agents, employees and other from any and all claims that Plaintiffs may have as to Wells, their attorneys, agents, employees and others.
>
> 56. Levin stated to Plaintiffs James McMenanmin [sic] that the loan modification was not possible as long as the foreclosure was being contested.
>
> 57. Levin stated to Plaintiffs James McMenanmin [sic] that the loan modification would be obtained when Plaintiff Jennifer McMenamin discharged James Jacquette, Esquire, withdrew her answer to the foreclosure with prejudice, that both Plaintiffs James and Jennifer McMenanmin [sic] agree to allow a judgment by consent be entered against them, to allow reassessment of damages and to execute a release of any and all claims that Plaintiffs may have against Wells, their attorneys, agents, employees and other from any and all claims that Plaintiffs may have as to Wells, their attorneys, agents, employees and others.[43]

As pled, the "interactions" upon which Plaintiffs' claims are based on occurred sometime between October 2012 and August 2013. Moreover, as pled, Plaintiffs' reliance on the alleged unlawful representations was manifested when Attorney Jacquette withdrew his appearance in the MCCCP action on August 13, 2013. Under this factual scenario, this Court is compelled to conclude that any representations made by Defendant Levin occurred sometime in 2012 or early 2013, but no later than August 13, 2013. Consequently, Plaintiffs' complaint, filed on August 15,

---

[41] Am. Compl. ¶41 (emphasis added).
[42] *Id.* at ¶51 (emphasis added).
[43] *Id.* at ¶¶55-57.